DADISMAN

*v.*

LONG *et al.*

(*Supreme Court of Appeals of Virginia, Sept. 26, 1895.*)

[22 S. E. Rep. 850.]

**Equity Practice—Accounting—Laches—Case at Bar.**

L. occupied land which he claimed to own, but which the court, in certain proceedings, decided to belong to D., and ordered the same to be sold to pay L.'s liens upon the property. D. paid off these liens, and took L.'s receipt therefor. Subsequently D. sued L. for an accounting for use and occupation and waste. His proof of damage was vague and uncertain, and he made no claim for damages for 18 months after paying the liens: *held* properly dismissed.

Appeal from circuit court, Page county ; R. H. Turner, Judge.

J. W. Dadisman appeals from a decree in favor of Lee Long and others. Affirmed.

*Strayer & Liggitt,* for appellant.

*Richard S. Parks* and *Marshall McCormick,* for appellees.

CARDWELL, J., delivered the opinion of the court.

The appellant, J. W. Dadisman, was in 1880 the owner of a tract of 43 acres of land, with buildings thereon, situated in the county of Page, the title to which was acquired by him from Elizabeth Dadisman and Sarah J. Dadisman, but subject to a life estate in one-half thereof in his brother, George H.

Dadisman. In certain chancery suits pending in the circuit court of Page county, for the purpose of subjecting this land to the lien of judgments against Elizabeth Dadisman, Sarah J. Dadisman, and George H. Dadisman, a decree was entered at the April term, 1880, directing a sale of the land, and appointing three commissioners for that purpose, who afterwards, in December, 1880, offered the land for sale at public auction, when the same was struck out to Michael Long, at the price of $400 for the interest of appellant, and $25 for the life interest of George H. Dadisman. It appears that prior to the sale an arrangement was made by the Dadismans with Michael Long to buy in the property at the smallest sum possible, but for enough to pay the costs and the liens upon it; Long to pay the purchase money, and give the appellant three years within which to repay it, with interest, and upon the payment of the purchase money by appellant, with interest, he was to have back his land. In accordance with this agreement, Michael Long paid the cash payment to one of the commissioners of the court, but instead of executing his bonds for the deferred payments, payable, according to the terms of sale, at one, two, and three years, he, as it is claimed, arranged with this commissioner to pay off the liens against the land, asserted in the suits in which the land was sold. Michael Long did pay off all of the liens on the land prior to his death, which occurred in 1887, except a balance of about $90, which balance was, after his death, paid by his son and executor, Lee Long, one of the appellees here.

The appellant, after the sale, remained in possession of the land, cultivating and using it as before ; but at the end of the three years, when all the purchase money was due, he was unable or did not repay it to Michael Long, with interest, as agreed, and asked for an extension of the time one year within which to redeem the land, which extension was granted by Long. At the end of the additional year given him, appellant was still in default in the payment of the amount due to Long,

and Long required possession of the property, which was yielded to him by appellant, except as to the house, garden, and some patch ground, appellant retaining possession of these, and agreeing to pay Long therefor an annual rental of $15. With the exception of the house, garden, and patch grounds occupied by appellant, Long took possession of the land, and proceeded to clear it up and cultivate it. This arrangement continued, it seems, until Michael Long's death, and until some time prior to May, 1890, when Lee Long, who claimed the property under the will of Michael Long, sued out a writ of unlawful detainer against appellant in the county court of Page county, to recover possession of the entire premises ; whereupon appellant filed his bill of complaint against Lee Long and Carry Long, as devisees of Michael Long, and John M. Chapman, sheriff of Page county, alleging that Michael Long was a purchaser of this land merely in form, that appellant was the actual purchaser, that he was to have the land whenever he repaid the purchase money and interest thereon from the day of sale, that he had several times tendered the money to Long, but he had refused it ; and praying an injunction to restrain the prosecution of the writ of unlawful detainer until the further order of the court, etc., that an account be taken of the value of the crops raised upon the land, and of the pasturage thereof, by either Michael Long or Lee Long, and for general relief. The injunction was granted as prayed for, and later an amended bill was filed in the cause against the same defendants and George H. Dadisman and the three commissioners appointed to make sale of the land in the creditors' suits, and by which amended bill appellant claimed damages against the Longs for their use and occupation of the property, removal of fences, and destruction of timber, the damages claimed being fixed in the amended bill at $600, and asked to be allowed against any claim of Michael Long or Lee Long which might be asserted against complainant, J. W. Dadisman, in regard to the land. Lee Long, as executor and devisee of Michael Long,

filed his answer, denying all the allegations made by complainant as to his right to the land or to redeem it, or to any damages claimed by him for the alleged depredations upon the land, and setting up a claim against complainant for valuable improvements that he claimed had been made on the lands by himself and father, Michael Long.

Quite a number of depositions were taken on either side, which are in the main very conflicting ; but the claim set up that Michael Long purchased the land under the agreement or understanding before mentioned seems to be clearly proven, as alleged by appellant in his original bill. It turned out during the progress of this suit that the sale of the land by the commissioners of the court in the creditors' suits against the Dadismans, in December, 1880, had never been reported to the court and by the court confirmed, whereupon one of the commissioners of sale, R. S. Parks, who received the cash payment of Michael Long, made a report to the court in the creditors' suits, and asked the confirmation of the sale ; but J. G. Newman, another one of the commissioners, also made a report, differing somewhat in its statements from those made by Commissioners Parks, filing along with his report a written offer from one John Short of $1,200 for the land, and recommending that the land be reoffered for sale, the bidding to commence at this advanced offer of $1,200. Upon the hearing of this cause, along with the creditors' suits referred to and the commissioners' reports made therein by Parks and Newman, respectively, the circuit court, on the 22d day of April, 1891, made its decree, refusing to confirm the sale to Michael Long, and refusing to allow the Longs credit for any of their alleged improvements, and directing a resale of the property by the same commissioners, the bidding to commence at the advanced offer of $1,200 made by John Short ; but afterwards, and during the same term of the court, this decree was amended so as to give appellant, as stated in the decree, 30 days from the rising of the court in which to pay and discharge the liens upon the land,

as audited in the creditors' suits, the payment of the liens to include the sums paid by Michael Long in his lifetime, or by his executor after his death, with interest. Appellant availed himself of this privilege given him by the amended decree, and within the 30 days paid off the entire amount due to the Longs, and amounting, with interest, to the sum of $690.21; the payment being made for him through his son-in-law, Reuben Foltz, to whom Lee Long gave his receipt, stating that the money received was "in payment of liens held against the Dadisman land by himself and Michael Long." There were no other proceedings had in the cause until the September term of the court, 1892, when appellant made application to have the cause referred to a commissioner, to report what damages ought to be awarded against the defendant for loss and injury to the land involved in the suit; but the court, having heard the argument of counsel, and maturely considered the question, as stated in the decree entered September 28, 1892, decided that appellant was not entitled to damages, as claimed, and refused to refer the cause for report on that question. It is from this decree an appeal was allowed to this court.

Counsel for appellees ask that their brief be treated as a cross appeal by Lee Long, and that the decrees of April 22 and 24, 1891, be reversed ; but we are of opinion that appellee Lee Long is estopped from questioning the correctness of these decrees by the acceptance from appellant of payment in full of the entire amount of liens paid off by himself and his father, Michael Long, with interest. Moreover, we think the decree of April 22d, as amended by the decree entered April 24th, fairly and justly determines the questions at issue between the parties, and is clearly right. It only remains to be determined whether or not the decree appealed from is erroneous.

The claims set up by the complainant in the court below, in his original and amended bills, are vague and indefinite. He alleges that the lands were cultivated by Michael Long, rails

removed from the premises, timber removed, and other depredations committed; but he does not state what crops were made on the place, the value thereof, nor the value of the fencing or the timber removed from the land, except in a general way, that the damage and injury sustained by him amounts to the sum of $600 ; and the testimony adduced by him in support of his allegations, which it is fair to assume is all that he could adduce, is equally as vague, indefinite, and unsatisfactory.    It is proven on his part by some of the witnesses that a few rails were taken from the place, but no value at all is fixed to the rails so taken.    While others testify that the Longs cultivated some of the land, grazed stock thereon, the value of the land for farming or grazing purposes is not shown, and no value is affixed to the timber said to have been taken from the place ; and this is the case as to all of the alleged depredations committed by the Longs upon the property.    On the other hand, it is shown that the Longs cultivated and used the land by an agreement with the appellant, and that, while some of the fencing might have been moved from the place, other fencing was put up, and the land, in a general way, was in a better condition when the evidence was being taken than when Michael Long took possession of it.    The proof by no means sustains the allegations in the original and amended bills as to damages claimed, and when appellant made payment of the liens on the land, as authorized by the decree of April 24, 1891, and held by Lee Long, without protest, so far as the record shows, or without assertion of any claim for an abatement of the amount due for the damages alleged to have been committed on the land, he evidently regarded at that time this settlement as the end of all controversy between him and Lee Long, appellee.    The application to the court, made, as it was, nearly 18 months after this settlement of the liens held by appellee, seems to have been an afterthought on the part of appellant ; and his application was, as we think, rightly refused by the circuit court, it being perfectly apparent, from the

nature of the allegations and the testimony in the record, that a reference to a commissioner and a report by him would not have put the court in any better position from which to determine the questions at issue than it occupied when the decree appealed from was made.    We see no error in the decree, and, for the reasons stated, it is affirmed.